OPINION OF THE COURT
Michael R. Juviler, J.
This case raises a question about the scope of the Penal Law *15 sections dealing with the crime of falsifying business records, a question left open in People v Davis (49 NY2d 910, 912). The answer affects not only the present case, but every instance in which a fraudulent written statement about a borrower’s financial condition is given to a bank or other lender to obtain a loan.
The defendants have been indicted on charges growing out of an alleged scheme to steal more than $300,000 from charities serving Brooklyn and from the City of New York. The charges include conspiracy, grand larceny by false pretenses, grand larceny by misappropriation, offering a false instrument for filing, falsifying business records, and issuing a false financial statement.
The alleged victims of the larcenies and false documents were Colony-South Brooklyn Houses, Brooklyn Association of Settlement Houses (B.A.S.H.), the New York City Department of Employment, the New York City Youth Bureau, the New York State Office of Charities Registration, the New York State Comptroller, Associated Black Charities (A.B.C.), and the Fund for the City of New York (The Fund).
At the time of the alleged crimes, the defendant Banks was the executive director of Colony-South and president of the board of directors of B.A.S.H., and the defendant Hall was the executive director of B.A.S.H. A third defendant, Anthey Sampath, has absconded.
After Banks and Hall moved for discovery, a bill of particulars, and a dismissal of the indictment — Hall joining in Bank’s motions and filing her own — this court on its own motion ordered additional particulars to assist it in ruling on the motions to dismiss and to clarify and simplify the issues if the case goes to trial.
The court has inspected the voluminous evidence before the Grand Jury and makes the following findings.
FALSIFYING BUSINESS RECORDS
The most substantial question arising from the indictment relates to three counts of falsifying business records in the first degree, class E felonies, charged against Hall (counts 39, 40, and 44).
Section 175.10 of the Penal Law provides that a defendant is guilty of falsifying business records in the first degree when the defendant commits the crime of falsifying business records in the second degree, and the defendant’s intent to defraud *16 includes the intent to commit another crime or to aid or conceal its commission. A person commits falsifying business records in the second degree when, with intent to defraud, he or she "[mjakes or causes a false entry in the business records of an enterprise” (Penal Law § 175.05 [1]; emphasis supplied). "Enterprise” includes an entity performing charitable activity. (Penal Law § 175.00 [1].)
The question is the extent to which those sections apply to false entries relating not to the financial condition of the enterprise whose records are alleged to have been tainted (Associated Black Charities and The Fund for the City of New York), but the financial condition of a different enterprise — in this case, B.A.S.H., the enterprise managed by the defendant. The question arises from the following language in the three counts and in the corresponding supplemental bill of particulars.
Count 39 charges that Hall and Sampath, "with intent to defraud, made and caused a false entry in the business records of an enterprise, namely, the Association of Black Charities [sic], and defendants’ intent to defraud included an intent to commit another crime, namely, larceny, and to conceal the commission thereof’ (emphasis supplied).
Count 40 alleges the same crime committed against the same enterprise on a different date.
The supplemental bill of particulars for count 39 specifies that the "false entry” was a document submitted to "Associated Black Charities” (the correct name of the enterprise) purporting to be an independent audit of B.A.S.H., required for membership in A.B.C. and for funding by the enterprise, when in fact the document was fraudulent and no audit had been conducted; for count 40, the document was a membership questionnaire designed by A.B.C. and answered by Hall, in which she falsely stated that an independent audit of B.A.S.H. had been sent to A.B.C. In both counts, the larceny was the theft of money by false pretenses from A.B.C.
Count 44 charges Hall with falsifying business records by causing a "false entry in the business records of * * * The Fund for the City of New York.” The supplemental bill of particulars alleges that the "false entry” was a document purporting to be an independent statement of B.A.S.H.’s finances submitted to The Fund in support of B.A.S.H.’s request for a loan of $10,000; the audit was fictitious. The larceny was the theft of that $10,000 by false pretenses from The Fund.
*17 Thus, one of the allegations in counts 39, 40, and 44 is that Hall submitted a false document to A.B.C. or The Fund, as the case may be.
On that narrow point, the three counts are supported by the evidence before the Grand Jury: The defendant Hall submitted to those charities documents containing or consisting of fictitious or false statements. The crime of falsifying business records can be committed by an outsider’s submission of a document containing false statements to a charity or other enterprise; the defendant need not be an officer or employee of that enterprise. (People v Weinfeld, 65 AD2d 911 [false claims for medical services submitted by defendant podiatrist to department of social services and Blue Shield became "business records” of those enterprises under § 175.05 [1]; § 175.10].) "Section 175.10 of the Penal Law, by its plain language, is not limited to employees or others having bookkeeping responsibilities. It applies also to those who supply erroneous information which results in false records.” (People v Linardos, 104 Misc 2d 56, 59 [Sup Ct, Queens County] [surgeon’s false claims submitted to Blue Shield].)
In the present case, the counts in question allege that the falsified records were "business records of [Associated] Black Charities” (counts 39, 40) or "business records of The Fund for the City of New York” (count 44). Penal Law § 175.00 (2) defines "business record” as any writing kept by an enterprise "for the purpose of evidencing or reflecting its condition or activity” (emphasis supplied). This means that to sustain these counts, the evidence before the Grand Jury must show that the falsified records evidenced or reflected the activity of the enterprise named in the counts: A.B.C. or The Fund. (Cf., People v Davis, 49 NY2d 910, 912, supra.) The People concede this, but maintain that the documents do reflect the membership and funding activity of A.B.C. and the loan activity of The Fund.
But the evidence before the Grand Jury shows that the documents purport to reflect the condition and activity of B.A.S.H., namely, B.A.S.H.’s financial condition and financial activity, not the condition and activity of the charities that gave the funds to B.A.S.H.
This view of the evidence is confirmed by the People’s supplemental bill of particulars. For count 39, the supplemental bill of particulars specifies that the offending document was a fraudulent audit of B.A.S.H.; for count 40, a member *18 ship report and agreement letter incorporating that fraudulent audit by reference; and for count 44, a fraudulent statement of B.A.S.H.’s finances. None of these entries is a reflection of the condition or activity of the charity to which it was submitted. Therefore, under the plain meaning of section 175.00 (2), none of them is a "business record” of the charity alleged to be the offended enterprise, and none of them supports the corresponding count in the indictment.
In contrast to the false claims for medical services at issue in Weinfeld (supra) and Linardos (supra), the false audits of B.A.S.H. and the false statement of the financial condition of B.A.S.H. created no "legal duties” or "obligation to pay” of the charitable enterprise to which they were submitted, and they created no "legal rights” of B.A.S.H. (See, People v Weinfeld, supra, at 912; People v Linardos, supra, at 59.) In the cited cases, the written medical claims created a duty of the county and Blue Shield to pay money to the medical provider; on that theory, they were documents "evidencing” and "reflecting” the "condition” and "activity” of those insurance enterprises. The evidence before the Grand Jury in this case did not establish a comparable obligation of Associated Black Charities or The Fund for the City of New York.
Only in the tautological sense that every piece of paper submitted to an enterprise by a person seeking to do business with it reflects the activity of that enterprise do the documents at issue here come within these statutes. It is therefore true, as the People urge, that the documents here reflect the membership activity of A.B.C. and the loan activity of The Fund. But those portions of the documents are not "false.” The crime of falsifying business records is committed by causing written statements of the condition or activity of an "enterprise” that are "false.” (Penal Law § 175.00 [2]; § 175.05 [1]; People v Davis, supra; People v Weinfeld, supra; People v Linardos, supra.)
Under the People’s overbroad construction, these Penal Law sections would apply to every loan application containing a false statement about the borrower that the bank or other lender puts in its files. (That would follow even if the loan were disapproved.) In the long history of these statutes and their predecessors in the former Penal Law, there is not one reported case on such facts.
In contrast, uttering a false audit would constitute the crime of offering a false instrument for filing (Penal Law *19 § 175.35), as is alleged in count 27, which charges Banks with submitting one of the false audits to the New York State Comptroller. That would also violate section 175.45, issuing a false financial statement, as is alleged in count 42, which charges Hall with issuing the false audit to The Fund. Also, since the fictitious audit of B.A.S.H. does purport to be a reflection of B.A.S.H.’s financial condition, placing that document among the business records of B.A.S.H. would violate the Penal Law sections dealing with falsifying business records; if the "enterprise” alleged in the count were B.A.S.H., the count would be supported by the evidence. That is precisely the situation with count 28, which charges Banks with falsifying BA.S.H’s business records by filing among them one of the false audits. Those counts are amply supported by the evidence before the Grand Jury.
The defect in counts 39, 40, and 44 cannot be cured by amendment of the indictment to change the "names” of the enterprises to "B.A.S.H.” (cf., CPL 200.70 [1]); that would "change the theory * * * of the prosecution” reflected in the legal instructions to the Grand Jury relating to those counts, in the clear wording of the indictment, and in the unambiguous supplemental bill of particulars. (See, CPL 200.70 [1], [2].) The three counts must be dismissed.
[Portions of opinion omitted for purposes of publication.]